The court now calls case number 116-300, People of the State of Illinois v. Mark Stevens. Are you ready to proceed? Please proceed. Almost good afternoon, Your Honors. May it please the court. My name is Brett Zeeb from the State Appellate Defender's Office, and I represent Mark Stevens in this matter. Mark Stevens' choice to testify on his own behalf at his trial for the sexual assault of BP did not by itself affect a waiver of his Fifth Amendment right against self-incrimination in the RG case, a separate case. This case is about what happens when a trial court overrides a defendant's Fifth Amendment right and forces him to testify regarding a separate pending case. Here, it resulted in Mr. Stevens being forced to try to exonerate himself in the BP case on trial while simultaneously forcing him to also exonerate himself in the pending case. It was basically two trials at once for two separate cases. And it resulted, this separate what we call a mini-trial in the brief, it was more than that. It was essentially another trial but without the constitutional or procedural safeguards that he had in respect to the case on trial, the BP case. And that sideshow not only eradicated his presumption of innocence in that pending RG case, it also elevated a mere propensity determination and it elevated that into a full-blown determination of Mr. Stevens' credibility in the case on trial, the BP case. If this Court affirms the appellate court's decision here, it would result in a substantial chilling effect on a defendant's Sixth Amendment right to testify at the case on trial. And at the same time jeopardize his Fifth Amendment right not to incriminate himself in the pending matter. I've got three main points to make. First, looking at Section 5115-7.3b, that's a limited statutory exception and it does not and cannot override a defendant's Fifth Amendment right against self-incrimination. It's an extremely limited statutory exception. It only applies when a defendant is tried on one of the enumerated offenses in that statute. It allows other crimes evidence to be admitted to suggest the defendant's propensity to commit sex crimes. But that statutory authority to introduce propensity evidence pursuant to that statute doesn't authorize the compelled testimony from Mr. Stevens about a pending case in violation of his Fifth Amendment right. There's nothing in the statutory language, there's nothing in the legislative history that indicate that this statutory exception to other crimes evidence was meant to trump a defendant's Fifth Amendment right. And notably, this is propensity evidence. It doesn't go directly to a disputed issue in the BP case. Whether Mr. Stevens sexually assaulted R.G. is a collateral issue in the BP case. But doesn't, when he knows that there's propensity evidence going to be presented, doesn't that figure into whether or not he makes the choice to testify? I mean, shouldn't he expect that he's going to get questioned about that when that comes in as substantive evidence? Mr. Stevens' attorney and Mr. Stevens could not expect that they would be forced to answer questions about the BP case unless they had specifically opened the door to questions with his direct examination. Just looking at the case law from Illinois historically that discusses the scope of, the proper scope of cross-examination, the breadth of a defendant's waiver, you look to what the defendant actually testified to at the trial. And here the appellate court acknowledged that Mr. Stevens did not answer, did not testify at all about the BP case. He limited his testimony to the case he was actually on trial for. Now, if he had made a general denial and said something akin to, I've never forcibly had sex with anyone, or if he had denied, if he had testified that he did not commit the assault against R.G., then, of course, he's opened the door to that testimony and basic fairness would allow the state to then cross-examine him about that. If we find error, could we find that it was harmless beyond a reasonable doubt? No, Your Honor. This was a preserved error, and so the state cannot show that it was harmless beyond a reasonable doubt. This was a credibility contest between Mr. Stevens and BP. And the state acknowledges that Stevens was repeatedly impeached by the testimony of Detective Kerbin and about these hearsay statements that came in about the R.G. matter in the context of this mini-trial that we allude to in our briefs. But critically, the trial court specifically noted that it found Stevens' testimony about that R.G., the separate case, to be, quote, preposterous. What about the physical evidence, DNA profile match? Well, certainly there was evidence of guilt in the BP case. But here we have a trial court specifically finding on the record and commenting about the defendant's testimony in a pending case, which he's presumed innocent of that case. This was an unconstitutional mini-trial in the context of the case he was actually on trial for. And again, the trial court specifically relied upon this evidence. The record supports the finding that the judge did. There's no reason to call the evidence in the pending case or the defendant's testimony in the pending case as a result of the cross to be preposterous and disturbing in the extreme. It's clear that the trial court judge relied upon that evidence to find Mr. Stevens guilty in the case on trial. But I guess I'm still talking about harmless beyond a reasonable doubt because of the level of the evidence. Well, this is a constitutional issue. This court has a duty to enforce the Constitution. I mean, I see what you're saying, that there was evidence of guilt in the BP case. But still, the trial court explicitly relied on the RG testimony, the forced testimony. It elevated a mere propensity determination. It's one thing to say that for a trial fact to find that a defendant has a propensity to commit sex offenses because the state has introduced that evidence pursuant to the statute. But it's another then to have essentially a whole other trial about a pending case where the defendant – I mean, it's not the same attorney who is representing Mr. Stevens in the RG case and the BP case. There's no way for Mr. Stevens' attorney on the BP case to anticipate that his client is going to have to answer questions on profs regarding that pending case. His client didn't open the door on direct. And then not only that, the state went a step further by allowing Detective Kerbin to come in and testify in rebuttal and testify extensively about hearsay statements that Mr. Stevens made regarding the RG matter after his arrest. Mr. Stevens never got a chance to possibly have those statements thrown out. We don't know the admissibility of those statements. We don't know if Mr. Stevens' attorney had access to any of the discovery in this pending case. He's not representing Mr. Stevens in that case. So I understand your question, Your Honor. But at the same time, there is a clear Fifth Amendment violation in this case. He didn't assert that, though, did he? Yes, he did. He did at the time? His attorney objected and said that he had a Fifth Amendment right as to the pending case. But he did testify regarding the RG? Well, defense counsel sought to talk to Mr. Stevens and explore the possibility of having his testimony rescinded, and the judge would not allow that. So he was forced to testify. Okay. You mentioned before credibility, right? So what about the issue of the fact that you said he didn't bring up the RG case? Correct. The defendant didn't bring it up. But with respect to the BP case, he did say that the sex with the 13-year-old girl was consensual, right? That's when he was forced to answer questions on cross after unsuccessfully invoking his Fifth Amendment right. Well, I'm talking about the BP case. I'm sorry, can you repeat that? It wasn't his defense that it was consensual? Yes, Your Honor. All right. So you mentioned credibility. So it wasn't fair at that point in time to attack the credibility of the consensual defense by bringing up the RG case? No. To show that that answer wasn't credible? No, because the state already was able to do that by cross-examining the defense about the case on trial, the BP case. The RG evidence is propensity evidence. It's not the same thing as direct evidence of guilt in the case that he's actually on trial for, the case that he and his attorney are prepared to defend. He still has a presumption of innocence in that separate case. And by forcing him to defend himself in a pending case in the context of a case he's actually on trial for, his presumption of innocence in that pending case is now destroyed. Where does the force come in? I mean, couldn't the privilege have been asserted as soon as the question was asked? That was attempted and it was not successful. The trial court judge overruled the objection, would not let him receive his testimony. I understand. But when you can be told all the time, answer the question, you don't have to answer the question, right? I mean, you could assert the privilege and that's the end of the story, right, at that particular point in time. I mean, obviously there would have been other things the trial judge could have done, but I'm trying to understand where the forcing to answer the question came. Did he blurt out the answer to the RG before the trial counsel could assert the Fifth Amendment privilege? No. He didn't testify to anything substantive about or anything incriminating, I should say, or anything harmful. I think there was one question and then an objection and then the sidebar regarding asserting the Fifth Amendment, trying to have the testimony possibly rescinded and then the trial court forcing the defendant to answer the question. And that's an important point, I think, in light of Justice Freeman's question. This was a bench trial, wasn't it? It's a bench trial, Your Honor, yes. All right. Does that have any bearing on whether the defendant was prejudiced here? Well, I think looking at the facts of this case, it could, but for the trial court judge specifically relying upon the testimony from Mr. Stevens about the RG case that he was forced to make. Right. So, again, on prejudice, it's a bench trial, not a jury trial, where the jury may not have been able to dissect the fact that the question was even asked regarding someone else. And then secondly, again, with respect to prejudice, the defendant here admitted, albeit his defense was it was consensual with this 13-year-old, he admitted there was sexual contact with BP, right? That's correct. All right. So in light of that, even if there was error, is it prejudicial error? Our position is that it is prejudicial error. And, again, I'm going to point, again, to the trial court singling out the testimony that Mr. Stevens was forced to give about the RG matter and calling it, on the record, preposterous and disturbing in the extreme. And when this case was, I mean, this court has found that when it's a credibility determination that, I mean, this is a constitutional error, if it could have tipped the balance, then it's prejudicial. And here the judge is calling this testimony preposterous and was clearly influenced by how much Mr. Stevens' credibility was destroyed because of this mini-trial that occurred in the context of the actual case on trial. I mean, reviewing courts have allowed evidence of other crimes. Some facts of other crimes have come in to show motive. They've come in to basically complete the picture of what's happened in the case. The Williams case is a good example where the other crime was a theft of meat. The court allowed that other evidence to come in because it explained the motive in the murder that happened as a result of the theft of the meat. So there's a direct link or a continuing narrative between the other crime and the offense on trial. You know, there's no link between the RG pending case, which occurred six years after the case on trial involving BP. Essentially this court would be sanctioning the state itself to open the door to cross-examination because the evidence had already come in pursuant to this limited statutory exemption that allows propensity evidence to come in. But the analysis should be, did the defendant open the door based on his actual direct testimony? It's undisputed that Mr. Stevens didn't testify about the BP case. I'm sorry, about the RG case. I want to follow up on Justice Thomas' initial question. Here, as I understand the events, the defendant testified. If we assume he did not open the door, then the state started asking questions that got into the RG case. Counsel objected. The objections to the questions were overruled. The defendant answered the question. If the defendant at that point said, I refuse to answer, starting Fifth Amendment grounds, what happens? I guess it's up to the judge at that point. Well, the objection is to the question. It's not to the answer or the response, isn't it? Can he direct him to answer the questions? Well, in this case, he did. A defendant's on trial in a very serious sexual assault case. There might be some inferences drawn from refusing to answer on grounds of incrimination, no question about that. But again, could he not have refused to answer, or was the ruling of the court, you answer the question, or you're in contempt or something like that? That's my interpretation of what occurred, although we can't know what happened off the record about what the judge said. But the effect of the judge's ruling was that Mr. Stevens felt compelled to answer these questions on cross-examination, and his attorney objected and attempted to assert a Fifth Amendment privilege on behalf of his client. Just for practical purposes, if this court affirms the lower court, it kind of begs the question of where does this end? The state only got in one pending case in this here pursuant to the statute, but what if they had gotten three? Are we going to ask a defendant to not only defend himself in the case on trial, but then have three other mini-trials for three other cases at once? It would be a nightmare. The more sensible approach here, again, is to look to what is the scope of the direct examination? Did the defendant open the door with his testimony? If he did, then cross-examine away. He's opened the door. That's basic law, basic fairness. And I'll just briefly mention People v. Nackiewicz from 1930, this court's decision. As far as I know, it's still good law. And there, this court held that the defendant only waives his Fifth Amendment privilege as to the matter he testified to on direct. And here's the quote, but he does not thereby waive his privilege of refusing to reveal other unlawful acts wholly unconnected with the act of which he has spoken, even though they may be material to the issue. That's precisely the situation here. The R.G. case is not, it's wholly unconnected to the BP offense, and it's only connected by virtue of the state being able to bring in this propensity evidence. Again, to show propensity, but not as direct evidence of guilt in the BP case. And the trial court specifically relied upon that testimony in finding Mr. Stevens guilty in the BP case. So he's guilty in this case. He had been acquitted. It begs the question of, now what's going to happen in the R.G. case? His testimony is locked in. He's given statements. He never got the chance to try to litigate pretrial. Could the state have brought in R.G. to attack the credibility of the defendant in his testimony saying that the sex with BP was consensual? Could they have brought in R.G. to testify and say, yeah, he did the same thing to me. He didn't. Could they have done that? Well, R.G. did come in and testify pursuant to the statute about what she alleged happened between Mr. Stevens and R.G. Set that aside for a minute. Just based on the testimony of the defendant regarding BP as having consensual sex. Could they have brought in R.G. or someone else to attack the credibility of the defendant in saying the sex was consensual? Sorry, I have to think about that for a moment. You're asking, ignoring the statute, ignoring them bringing in the propensity evidence. Right. Do they have the right to attack the credibility of the defendant taking the stand to say in this particular case, in the BP case, it was consensual sex? Do they have the right to show that in other circumstances the same claim may have been made, but the person indicated that it wasn't true? No, because it's another crime. And this Court has historically not allowed particular facts of other crimes to come in. Not for the purpose to show that the crime was committed, but to show that the defendant had said the same thing in another circumstance to attack that defendant's credibility? No. I'm not aware of any case anywhere that has allowed that. So you'd be the first. Well, I'm not doing it. I'm just asking the other questions. Thank you, Counsel. Your time has expired. You'll have time on rebuttal. Good morning, Your Honors. It's an honor to be here, my first time in front of you. And may it please the Court, my name is Assistant State's Attorney Iris Ferrosi, here on behalf of the people. And, Your Honor, defendant is convoluting actually a pretty straightforward thing. That's been around since 1900. And that is when a defendant takes the stand and chooses to testify, he opens himself up to all relevant cross-examination, which is determined by the trial judge, who has the discretion to allow it, and which is also determined by the evidence at trial and defendant's statements or testimony on direct examination. Back in 1900, the United States Supreme Court in Fitzpatrick, it's cited in my brief, stated that a defendant has no right to set forth to the jury all the facts which tend in his favor without laying himself open to cross-examination on those facts. And here, before defendant testified, there was a pretrial motion where the court allowed other crimes evidence of R.G. and two other defendants to testify. And when the case went to trial, B.P. testified, as you know, that she was approached by defendant, he put a weapon to her back, took her to another location, and forced anal, vaginal, and oral sex on her. Then the state presented R.G. in their case in chief, who also testified. She was approached by a defendant from behind bars. When she was on the L platform, he forced her to another location. He performed, or forced her to perform oral, anal, and vaginal sex. Defendant had, knew these facts before he chose to testify. He knew there was a pretrial motion. He knew that both R.G. and B.P. testified. And when the defendant testified, he did not assert his Fifth Amendment right until the prosecutor asked him about that. He went into a full cross-examination about B.P. And let me remind you what he said on cross. He said that B.P. not only instigated this 13-year-old B.P., she navigated it. She was asking him, please, can I perform oral sex on you? Would you please perform anal sex on me? And as you may recall, he said, you know, I thought that was a little messed up, and I said, let's do it vaginally first. And she said, but please, please do this. That was his testimony on cross-examination. And then he asserted his Fifth Amendment right, or tried to, when the prosecutor started asking about R.G. And your position, and that's why I asked that last question, your position seems to be that the, on the whole Fifth Amendment issue, I mean, put aside, again, the other crimes evidence, you're saying that once he testified that it was consensual sex with B.P., that you had the right to attack the credibility of that assertion by asking him about R.G.? Exactly. All right. And that's why I asked him if, do you, would you have that right? Would you have the same right to bring in R.G.? Forget the other crimes evidence that was allowed, even if it wasn't, would you have been allowed to bring in R.G. under those circumstances to say, hey, that's not what happened with me? I mean, he may be singing that same song again, but it's not true. Yes. To attack the credibility, because you're taking the position that, and there's all other issues regarding this Fifth Amendment that we've discussed, but you're taking the position that you are able to ask the question because credibility, his credibility now became at issue when he testified about consensual sex with B.P. Yes, your Honor. That and his intent had become an issue now. He was saying this was consensual, I did not have this forcible rape with B.P. My intent, an element of the crime, is now at issue. And that, which I might add the defendant is conceding that it was admissible. He's not, he's not arguing that the court should not have allowed this evidence. And so he's even conceding it's admissible to show intent, motive, identity and propensity. So when he, when he's saying that we were just using for propensity, that's not true. It was also to show intent because the defendant testified this was all consensual. Not only consensual, but B.P. was, you know, begging for it essentially. So we were allowed to question about R.G., not only to attack his credibility in this consent, you know, testimony that he gave, but also to prove a substantive issue in the case, which was his intent. Can I be really precise in this, because my questions were going to be about the nature of propensity evidence. Whether in fact it is admitted as substantive evidence, or if it's in fact admitted as character evidence. And if that makes a difference in our analysis. In other words, what is the issue to which this cross-examination was relevant? Was it relevant to his propensity to commit this kind of crime? To the nature of his character? And whether in fact his testimony on direct then opened up the door to cross-examination of the scope of his testimony about his propensity or his character. Or are you saying it was being admitted for another purpose? What I'm saying, Your Honor, is, and if I missed part of that. Is the substantive evidence, what did this evidence come in for? Was it substantive evidence to prove a fact? Was it evidence to show something about his character? Or was it something else? Well, it came in as substantive evidence, for sure. The cross-examination came in as substantive evidence? Yes, to prove his intent. That his intent with BP was not, was a criminal intent. That it was forced sex on BP. That it was not this consensual situation. But also with the propensity evidence, it came in also as propensity to show that, as this Court ruled in Donahoe, that there's recidivism with sex offenders. And that's why it's allowed in in the first place. That it's less likely that that encounter with BP was consensual because he's done it to another person. So just based on the recidivism argument. So it comes in as that way, too, to attack this testimony that he gave. So you're really saying that he, by testifying, he opened the door by saying that it was consensual with BP? Absolutely. And the cases I cited in my brief, my three cases from this Court, Provo, Williams, and Gaccio, support that. Because in each of those cases, the defendant was allowed to be cross-examined about things that he did not testify about on direct examination. And that was because it proved in Provo it was intent, Williams it was motive, and Gaccio it was to attack his credibility. And each time, the state was allowed to do it because there was a substantive purpose. There was something other than just questioning him for no reason. It went right to his guilt. And that's why it was allowed. And went to the substantive issue in the case. Not collateral, as defendant is claiming. It was not collateral. This goes right to an issue. And even the cases the defendant cites still support our position. Because defendant cites, there's two cases from New York, Betz and Cantave, which was almost like a Montgomery. They have a Sandoval hearing in New York and we have Montgomery. And that's where you're trying to bring in another crime just for impeachment purposes. And no one's saying that there's any relation between the crime you're going to use to impeach the defendant's credibility, if he chooses to testify, and the case in chief. But here, the court made a ruling that there was a connection. And that it was more probative than prejudicial. In Betz and Cantave, the court said that's not allowed because it's totally, wholly unconnected. But this case, there is a connection between BP and RG, which the court ruled on, which defendant is not contesting that ruling. So it was for a purpose other than just impeaching his credibility. It was also for proving intent and his motive and propensity. Defendant mentioned Natchewitz. So in Natchewitz, that also supports us. Because the court, this court said in that case that it is allowed unless it's wholly unconnected. Wholly unconnected is like a Betz and Cantave, like a Montgomery issue, where there's no connection between the other crime. It's not other crime's evidence, such as this, to prove an element of the crime. And so when the trial judge made that ruling and said, he even said, you just gave a whole consent offense. I mean, they can question you on RG. You just gave a whole consent offense, clearly ruling that this was going right to his intent. And to allow otherwise, like what defendant is suggesting, would mean that the defendant now controls what type of evidence comes in. And defendant controls whether the truth is coming in. Because that's the whole reason we do the trial, is to get the truth out so we can learn what happened. And to say, for him to allow to pick up that shield, the Fifth Amendment shield, when he doesn't want to talk about something, even though he knows it came in as relevant evidence and is here, is not even contesting that, then that would subvert the fact-finding process. Getting to the truth, was BP really sexually assaulted or not? And to give the defendant the keys to that car, instead of leaving it with the trial judge, would really destroy the whole fact-finding process. And this court recently held in Ward that the fact-finder logically must have access to as much relevant admissible evidence as possible. Without that, the reliability of the fact-finder's conclusions is called into question. And that's exactly what would happen. If a defendant were to be allowed to lower that shield, decide to testify, and lift the shield. Does the other crimes evidence already go into your argument on no prejudice as well? I mean, it was out there anyway? Yes. Regardless of what the defendant said or didn't say? Exactly. And also, defendant, just like you said, Your Honor, all the evidence was already in, regardless. I mean, yes, he should have been crossed on it to prove the element of intent in this case, and his propensity, but we already had evidence of that. And this isn't a situation I wanted to add. There's a case that he cited, the defendant cited Gaydress. I don't know if I'm saying it correctly, but that is a situation where the state just comes in and ambushes the defendant. Okay, the state is just questioning about these unrelated armed robberies, and there was no evidence brought in on it. There was no pretrial motion. And basically what the state was trying to do was get him to admit to something so they could charge him with something. This is not a situation like that. This is not an ambush by the state. This is a defendant totally aware of what the evidence is when he makes that decision to testify. And I might add, too, that the defendant is now saying that this testimony alone on cross about R.G. created a mini-trial. He never argued that before this brief. That was never argued to the appellate court, and this is the first time. So we're first going to assert that it's been forfeited, because he's never argued it. But even so, the evidence of R.G. was so limited, it was just her testifying, and we were required to put on that detective, because the defendant was impeached, about the statements he made to the police after he was arrested for the R.G. case. So we were required to put on the detective, and I believe it was three pages of the entire record, which was devoted to that. That alone, just cross-examining him on R.G. did not create a mini-trial. And absolutely, the trial judge is able to distinguish the difference and can separate what's the other crime's evidence and what's the substantive case. It is different than a jury. This isn't a situation where the jury might get confused. The trial judge absolutely knew. And I wanted to answer, too, that if R.G. hadn't testified, we absolutely, if the defendant would have testified to a consent defense with BP, we could have put R.G. on in our rebuttal case, which happens all the time. We'll just put her on in rebuttal to rebut it. Obviously, we couldn't cross him on it because there was no evidence at trial, but we could have put her on in rebuttal. But in this case, we put her on in our case in chief to prove the elements of aggravated criminal sexual assault. So for my last argument, Your Honors, even if this was an error, it was absolutely harmless. I've already told, kind of went over the facts of what the victims testified to, but also there was DNA evidence. BP, when she came home, had bloody semen in her rectum and her vagina. That semen matched the defendant's DNA. She also testified when years later when she had to identify him in a photo array, she became physically ill and vomited. And that when she had to testify and point him out in court, in the record you can see, she was very upset. Plus, R.G.'s testimony, which is such a similar situation as BP, clearly would prove the case beyond a reasonable doubt, even without the cross-examination. So, Your Honors, for these reasons that I've stated today and I've argued in my brief, we would ask that you affirm the trial court and the appellate court and hold that the defendant was permissibly cross-examined. About R.G.'s case. Thank you. I'll try to keep it short, Your Honors. Thank you. Just a couple things. We agree that the truth should come out in a trial, especially a very serious one like this, but that truth can't come out in violation of the Constitution. It can't come out in violation of the Fifth Amendment. It can't come out and the result be a very real chilling effect on a defendant's Sixth Amendment right to testify in a trial. There is a difference between character evidence and substantive evidence. Defense of the evidence is not direct evidence of guilt. It allows a trier of facts to make an inference that a defendant is more likely to commit a sex offense. But it's not direct evidence of guilt in the case on trial. So it is a critical difference. Was this evidence admitted as propensity? Was it admitted as other crimes evidence? What was your understanding of how or what purpose this evidence was admitted? R.G.'s testimony was brought in to show propensity pursuant to the statute. But the forced cross-examination... Counsel suggested it had other purposes. Its purpose was to prove other crimes. Intent. During the colloquy when all of this was taking place, was it ever made clear to the judge the purpose for this evidence? Well, the statute allows it to come in for basically everything under the sun, seemingly. But I guess the important point is how was it used? The state's cross, the forced cross of Mr. Stevens, and then the testimony from Detective Kerbin that came out, came out after that as a rebuttal witness. Its purpose was to destroy this credibility in the BP case. And they did that. This evidence was not used for identity. It wasn't an issue in the case. It wasn't used for motive. How can something that occurred six years after the case on trial be a motive?  The cases that the state cites, the three cases, Gaccio, Williams, and Provo, I'll just briefly address those. I touched on Williams in my opening argument. And again, there's a direct connection between the other crime and the case on trial. The theft of the meat provided the motive for the murder, the case on trial. It completed the picture. There was a direct link. Not so here. Gaccio was the same thing. It wasn't even another crime that came in. He had written letters to his alleged girlfriend witness. And Mr. Gaccio testified. And the court allowed cross-examination about those letters. There's a direct link there. And the same thing with Provo. Just excuse me for a moment. Again, that cross-examination was about a second older bullet hole in the wall that helped and went directly to the defendant's testimony about the case. The court's language there was it threw light upon his testimony. But here there's no connection between the RG case and the BP case, but for the fact the state opened the door. They essentially opened the door to cross-examination on a pending case by introducing evidence pursuant to an extremely limited statutory exception to other crimes evidence. This court has not allowed particular facts about other crimes to come in. They can come in to show impeachment that the defendant chooses to testify. But there's no other case in this state where the court has sanctioned this type of unconstitutional other trial about a pending case. And this issue is not forfeited. The Fifth Amendment issue was objected to. It was preserved. Arguments about mini-trials is just a natural extension and basically a policy argument about what occurs as a result of the error. It's not an entirely new objection or issue that we're raising out of thin air. That's a preposterous argument that it's forfeited. And again, it wasn't just the cross-examination of Mr. Stevens that made this an improper mini-trial. It didn't stop there. The detective came in and testified extensively about statements that Mr. Stevens allegedly made to him, multiple statements, and statements to an assistant state's attorney. And it was that testimony, coupled with the forced testimony about R.G. from the defendant, that elevated, again, a mere propensity determination to basically direct evidence in the case that the trial court explicitly relied upon to find him guilty in the BP case. This court should hold that Mr. Stevens' Fifth Amendment right against self-incrimination was violated when the state forced him to answer questions about a pending, unrelated case. And this court should reverse this conviction and remand for a new trial on the BP matter. Thank you. Thank you.